UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KIMBERLY R. PERKINS,

                             Plaintiff,

                -against-

UNITED STATES DEPARTMENT OF THE
TREASURY; UNITED STATES BUREAU OF
THE MINT; STEVEN T. MNUCHIN, SECRETARY
OF THE UNITED STATES DEPARTMENT OF
THE TREASURY,

                           Defendant.
----------------------------------------------------------------X

Docket No.   **18-cv-8911**

**<u>COMPLAINT</u>**

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, Kimberly R. Perkins ("Plaintiff" or "Ms. Perkins"), by and through her attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of Defendants United States Department of the Treasury; United States Bureau of the Mint; Steven T. Mnuchin, Secretary of the United States Department of The Treasury ("Defendants"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

1.    This action is brought to remedy the Defendants' intentional, unlawful discrimination, based on race (African American), sex (female), age (51), and disability, and retaliation for protected activity against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, and 1985, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq., the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 et seq., the Rehabilitation Act of 1973 §§ 501 & 505, 29 U.S.C. 791 et seq., and the Executive Law of the State of New York, New York State Human Rights Law ("Executive Law") § 296 et seq.

## THE PARTIES

2.      Plaintiff is an African-American female (year of birth: 1966), who suffers from severe stress and anxiety disorder.

3.      At all relevant times, Plaintiff was and is a resident of the State of New York.

4.      At all relevant times, Plaintiff has been employed by the U.S. Mint located in West Point, New York for approximately thirty (30) years.

5.      Plaintiff has been medically diagnosed with the disability of stress and anxiety disorder, which is a chronic and/or long term condition that substantially limits Plaintiff in a number of major life activities, including: working, concentrating, sleeping, and eating.

6.      Upon information and belief, Defendant United States Department of the Treasury is in the Executive Branch of the federal government, the mission of which includes promoting economic growth through financial and fiscal policies to support job creation, investment, and economic stability.

7.      Upon information and belief, Defendant United States Bureau of the Mint ("U.S. Mint") is a component of the Department of Treasury.  Among other things, the U.S. Mint is the world's largest manufacturer of coins, medals, and numismatic products, and has responsibility for the U.S. Bullion Depository at Fort Knox, Kentucky.

8.      Upon information and belief, Defendant Steven T. Mnuchin is the Secretary of the Treasury, the Cabinet official who heads the Department of Treasury and is sued in his official capacity only.

## JURISDICTION

9.      Jurisdiction of this Court is based upon 28 U.S.C. § 1391; and 42 U.S.C. § 2000e-16.  The discriminatory and retaliatory actions that are at issue were all taken by or at the direction

of the Treasurer of the United States, the Deputy Director of the Mint, and/or the Chief Administrator of the U.S. Mint from their duty stations in the Mint Headquarters in Washington D.C.  Venue lies here pursuant to 42 U.S.C. § 2000e-16 because the discriminatory and retaliatory actions of defendant at issue occurred in this judicial district; and Plaintiff resides in this judicial district.

10.     This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State claims pursuant to 28 U.S.C. § 1367(a).  The New York State discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and the New York State law claims form part of the same case or controversy.

11.     Plaintiff timely filed a charge of discrimination against Defendants with the United States Equal Employment Opportunity Commission ("EEOC") in which she alleged the Defendants discriminated against her on the basis of race, age, and disability.

12.     The EEOC reached a decision on June 29, 2018 and issued Plaintiff a Notice of Right to Sue; and the Notice of Right to Sue was received by Plaintiff, at the earliest, on July 2, 2018, or on a date thereafter.

13.     The instant action is timely because it is initiated within ninety (90) days of Plaintiff's receipt of the aforementioned Notice of Right to Sue, and Plaintiff has exhausted her federal administrative remedies as concern the allegation in this Complaint.

**FACTS**

14.     Plaintiff is a fifty-one (51) year old African American woman.

15.     Plaintiff has been working at the mint for approximately thirty (30) years as a Supply Technician for the United States Mint.

16.     Plaintiff has a documented stress and anxiety disability that interferes with the performance of her job unless given proper accommodations.

17.     Upon information and belief, from in or about March 2013, and continuing on an ongoing basis, Plaintiff has been subjected to a pattern and practice of discriminatory and retaliatory actions by Defendants on the basis of her race, age and disability.

18.     Upon information and belief, Debra Satkowski is the Supervisor of Supply Technology Inventory and was Plaintiff's first level supervisor from March 2013 to September 2013.

19.     Beginning on or about March 1, 2013, Plaintiff's supervisor, Debra Satkowski, Supervisor of Supply Technology Inventory, and Plaintiff's first level supervisor at the time, began criticizing Plaintiff's work performance to Plaintiff's coworkers without justification.

20.     Upon information and belief, Ms. Satkowski began documenting everything Plaintiff did and said.

21.     On or about August 30, 2013, two co-workers, Martha Hurtado and Robin Lare, informed Plaintiff that Ms. Satkowski held a meeting with a group of Plaintiff's co-workers where Ms. Satkowski proceeded to make a number of disparaging remarks to the group about Plaintiff's work performance including, "Kim Perkins works good for six months and six months she doesn't. I am documenting everything she says and does."

22.     Upon information and belief, Karen Lawless is the Supervisory Inventory Management Specialist and was Plaintiff's first level supervisor from September 2013 to November 2013.

23.     On or about September 23, 2013, Plaintiff informed Ms. Lawless of disparaging remarks that had been made about her by Ms. Satkowski, which caused Plaintiff much anxiety

resulting in a lack of focus in her work. Furthermore, Plaintiff requested that she no longer work under Ms. Satkowski.

24.     After this incident, Mr. Dinardi, Deputy Plant Manager, and Plaintiff's third level supervisor at the time, investigated this matter and found that Ms. Satkowski had made disparaging remarks to colleagues regarding Plaintiff.

25.     As a result of Mr. Dinardi's investigation, rather than take appropriate action with Ms. Satkowski, Mr. Dinardi removed Plaintiff from Ms. Satkowski's supervision.

26.     On or about September 30, 2013, Plaintiff met with Mr. Dinardi, Ms. Lawless, and Ms. Satkowski concerning Ms. Satkowski's conduct.

27.     During this meeting Ms. Satkowski made threatening remarks towards Plaintiff stating, "what are you going to do when you have to work under me again?"

28.     After this incident, Ms. Satkowski was working overtime with Plaintiff and worked the same shift as Plaintiff with her desk right next to Plaintiff's, which caused Plaintiff severe stress and anxiety.

29.     On or about January 13, 2014, Ms. Satkowski was designated to be the acting supervisor for the day.  Plaintiff requested medical leave from Mr. Dinardi, as she had become ill, due to the history of mal-treatment Plaintiff was subjected to by Ms. Satkowski.  Mr. Dinardi told Plaintiff to speak with Mr. Kelly in Human Resources regarding this request.

30.     As advised by Mr. Dinardi, Plaintiff went to Mr. Kelly with her request to leave work and the reason for her request.

31.     When Plaintiff made her request to leave work along with her explanation, Mr. Kelly became hostile and aggressive with Plaintiff, pointing his finger at her, in her face, yelling

at her and threatening her that she would be put charged with absent without leave ("AWOL") if she left work early.

32.     On or about January 29, 2014, Plaintiff's physician, Dr. Joseph Agyemang M.D., documented Plaintiff's FMLA request for reasonable accommodation, however, plaintiff's request was denied by Carol Helbig, a Human Resources Department employee.

33.     Plaintiff was informed the basis of the rejection of her FMLA request was her medical information was rejected as insufficient, even though the documentation that Plaintiff had provided was usually considered sufficient to grant medical leave.

34.     On or about January 30 and 31, 2014, Plaintiff did not report to work on account of her medical condition.  Management disregarded Plaintiff's doctor's note and Plaintiff was charged with being AWOL.

35.     Upon information and belief, on or about February 4, 2014, upon Plaintiff's return to work, Plaintiff emailed Louis Dinetz and Ms. Lawless regarding the fact she was deemed AWOL for her medical absence on January 30 and 31, 2014 and was not provided a response, nor was her AWOL status removed for those days.

36.     On March 20, 2014, Plaintiff was scheduled to return to work. Subsequently, Human Resources Manager, Mr. Kelly issued a "security alert" against Plaintiff, stating, "security is always informed of all employees returning to work need medical clearance before they can report to work. Security is instructed to contact Human Resources or the employee's supervisor when they return."

37.     Plaintiff received notice from the Agency's security personnel that the Agency had issued a "security alert" against her and that she was no longer allowed on Agency property.

38.     Further, when Plaintiff returned to work from her medical absence, she was informed by Robin Lare, Mark Caramatti, and Ernesto Gonzalez that an e-mail was forwarded to Agency employees indicating that a security alert had been issued against Plaintiff that banned her from being on Agency property.  This caused Plaintiff severe anxiety as she was being singled out from the rest of her colleagues.

39.     Another employee, Victor Doe (last name unknown), a white male, was out of work on medical leave and there was no security alert issued for him, nor was he restricted from coming on the Mint property.

40.     On or about July 17, 2014, Ms. Kemp, Supervisory Supply Technician assigned Plaintiff to work alone on a project that was too much for one person to complete.  Plaintiff requested leave due to extreme stress which was exacerbated by Plaintiff's sister being in the late stages of cancer.  However, it was denied by Ms. Lawless.  Ms. Lawless threatened to fire Plaintiff if she left.

41.     Plaintiff left work the morning of July 17, 2014 because of her severe stress under the circumstances.  .

42.     Plaintiff's sister died on July 22, 2014.  Plaintiff informed Ms. Lawless that she needed to travel to Alabama for the funeral.  Plaintiff was charged with AWOL by Ms. Lawless, and only found out about this upon her return to work on July 30, 2014.

43.     On or about October 20, 2014, Plaintiff's first-line supervisor, Ms. Kemp issued Plaintiff her fiscal year performance appraisal with a rating of "fully successful."

44.     Ms. Kemp informed Plaintiff that her rating would have been higher if not for her AWOL charge on July 17 and 18, 2014.  Plaintiff's protected classes caused or became a factor

for the Agency to discriminate against Plaintiff when Ms. Kemp issued Plaintiff her performance appraisal.

45.     On or about January 9, 2015, at the request of her doctor, Plaintiff made another request to be transferred to another department.  Plaintiff made this request to Mr. Richard Peterson and advised Mr. Peterson that the request was being made upon Plaintiff's doctor's advice. Additionally, on numerous other occasions including but not limited to January 13, 2014, January 30 and 31, 2014, July 17 and 18, 2014, and September 3-5, 2014, Plaintiff advised Agency management that she could not work due to stress and anxiety and requested that she be granted sick leave.

46.     All of these requests and countless other conversations Plaintiff had with Agency management regarding her stress and anxiety put Agency management on notice that Plaintiff was suffering from stress and anxiety and needed a reasonable accommodation, yet no reasonable accommodations were granted.  Plaintiff either did not receive a response or denials were given immediately.

47.     Plaintiff did not receive any reasonable explanations as to why her requests were being denied.

48.     Other white employees' requests for reasonable accommodation and have been transferred to other departments. This includes Wendy Konzelman and Chris Cowen.

49.     On or about April 24, 2015, Plaintiff called in sick due to stress caused by the workplace environment. Plaintiff left Ms. Kemp, Plaintiff's supervisor, a voice message.  Plaintiff texted Ms. Lawless as well, letting her know that she was sick.  Plaintiff never received a response. Plaintiff later found out that she was marked as AWOL.

50.     Plaintiff has never been given a meeting or any other explanations as to why she was being placed on AWOL.

51.     On or about January 9, 2015, Plaintiff requested a transfer to another department. Plaintiff's request was denied, however three (3) white males were given a detail in a new department.

52.     When Plaintiff inquired as to the reason for the denial, Mr. Dinardi told Plaintiff that Agency management knew that she was filing an EEOC complaint.

53.     In or about March 2015, Plaintiff was denied attendance at a retirement class that other employees were allowed to attend.  The class had twenty (20) white and four (4) minority employees.  Spouses of the white employees were allowed to attend as well, however Plaintiff was denied this opportunity.

54.     Additionally, the Agency has also interfered with Plaintiff's EEOC rights, including the ability to use work time in connection with Plaintiff's EEOC complaints.  The Agency has made Plaintiff use her own time to work on her EEOC complaints and this time has not been returned to Plaintiff.

55.     Furthermore, Plaintiff helped with Agency's internal audit and was supposed to receive a $500 award.  Ten other Caucasian employees who also assisted with the audit were given the award.  Plaintiff and another minority co-worker, Martha Hurtado, who assisted with the audit, were the only two employees who did not receive the bonus.

56.     On or about August 1, 2016, upon information and belief, in continuation of Defendants' ongoing discriminatory actions and activity, Defendants' required Plaintiff to use leave without pay rather than her annual leave to cover her absence after having called in sick.

57. On or about August 10, August 11, and November 4, 2016, Plaintiff was placed on AWOL after calling in sick.

58. Upon information and belief, on or about August 18, 2016, Ms. McCullom met with Keith Bailey, John Wright, and Mark Delarede--all white males. Each of them was given a meeting to discuss promotions and transfers to other departments. Plaintiff has tried to schedule numerous meetings with management over her twenty-nine (29) years at the U.S. Mint and has consistently been denied meetings with Ms. McCullom.

59. On or about September 9, 2016, Plaintiff met with Ms. Lawless regarding a cash award that was supposed to be given in August. Ms. Lawless informed Plaintiff that she would not be receiving a cash award "because of disciplinary actions." Other employees in Plaintiff's department received this cash award. The baseless denial of the cash award by Ms. Lawless is one of numerous instances of Defendants' discriminatory procedures directed at Plaintiff in place at the U.S. Mint.

60. On or about September 12, 2016, Plaintiff was suspended for seven (7) days without pay and which caused Plaintiff to lose her overtime pay as well. Plaintiff was denied numerous requests for a meeting as to the reason for her suspension.

61. Agency Management, specifically Ms. Kemp and Ms. Lawless, have been systematically and consistently discriminating against Plaintiff due to her race, age, and disability. Ms. Kemp and Ms. Lawless are the only two decision makers regarding Plaintiff's suspension, awards, and bonuses and have been engaging with Plaintiff in a discriminatory and hostile manner.

## **FIRST CAUSE OF ACTION**

**Discrimination Based Upon Race in Violation of
Title VII, 42 U.S.C. 2000e et seq.
(As Against All Defendants)**

62.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

63.     At all relevant times, the U.S. Mint was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), because such entity had more than fifteen employees.

64.     At all relevant times, Plaintiff was a "person" within the meaning of Title VII, 42 U.S.C. § 2000e.

65.     The discriminatory actions of the Defendants were invidious and repugnant.

66.     Defendants discriminated against Plaintiff on the basis of her race (African-American) in violation of Title VII by treating her differently from and less favorably than similarly situated employees, and subjecting her to disparate working conditions and other disparate terms and conditions.

67.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

68.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and anxiety,

**SECOND CAUSE OF ACTION**
**Discrimination Based Upon Race in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

69.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

70.     At all relevant times, the U.S. Mint was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

71.     Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

72.     Defendants discriminated against Plaintiff on the basis of her race (African-American) in violation of the New York State Human Rights Law by treating her differently from and less favorably than similarly situated employees who were not African-American by subjecting her to disparate working conditions and other disparate terms and conditions.

73.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

74. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

75. That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), as well as costs, and attorney's fees, and any other relief this Court may find just and proper.

### THIRD CAUSE OF ACTION

### Discrimination Based Upon Disability in Violation of Americans with Disabilities Act ("ADA") (As Against All Defendants)

76. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

77. Defendants discriminated against Plaintiff on the basis of her disability in violation of the ADA by treating her differently from and less favorably than similarly situated employees, and subjecting her to disparate working conditions and other disparate terms and conditions.

78. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

79. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and

emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation.

**FOURTH CAUSE OF ACTION**
**Discrimination Based Upon Disability in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendant Jurisdiction)**

80.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

81.     Defendants discriminated against Plaintiff on the basis of her disability in violation of the New York State Human Rights Law by treating her differently from and less favorably than similarly situated employees who were not disabled and by subjecting her to disparate working conditions and other disparate terms and conditions.

82.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

83.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

84.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE HUNDRED THOUSAND DOLLARS

($500,000.00), as well as costs, and attorney's fees, and any other relief this Court may find just and proper.

**FIFTH CAUSE OF ACTION**
**Discrimination Based Upon Age in Violation of**
**the Age Discrimination in Employment Act ("ADEA")**
**(As Against All Defendants)**

85.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

86.     Defendants discriminated against Plaintiff on the basis of her age, in violation of ADEA, by subjecting her to disparate terms and conditions that similarly situated, younger individuals did not endure.

87.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of ADEA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

## SIXTH CAUSE OF ACTION
### Discrimination Based Upon Age in Violation of
### New York State Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

88.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

89.    At all relevant times, the U.S. Mint was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

90.    Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

91.    Defendants discriminated against Plaintiff on the basis of her age, in violation of the New York State Human Rights Law, by subjecting her to disparate terms and conditions that similarly situated, younger individuals did not endure.

92.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

93.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation.

94.     That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), as well as costs, and attorney's fees, and any other relief this Court may find just and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Retaliation in Violation of
### Title VII, 42 U.S.C. § 2000(e), et. seq.
### (As Against Both Defendants)

95.     Plaintiff hereby repeats, reiterates, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

96.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

97.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000(e) et seq., by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

98.     As a direct and proximate result of Defendants' retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

99.     As a direct and proximate result of Defendants' retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation.

100.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), as well as costs, attorneys' fees, and any other relief this Court may deem just and proper.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
**Retaliation in Violation of**
**New York State Human Rights Law**
**(As Against Both Defendants)**

101.    Plaintiff hereby repeats, reiterates, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

102.    In violation of New York State Executive Law § 296 et seq., Defendants retaliated against Plaintiff, based on her gender, by failing to address any of her complaints regarding ridicule, harassment, and a general hostile work environment.

103.    As a direct and proximate result of Defendants' retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

104.    As a direct and proximate result of Defendants' retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer severe mental anguish and

18

emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation.

105.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), as well as costs, attorneys' fees, and any other relief this Court may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff hereby demands a trial by jury on issues of fact and damages stated in this Complaint, and on any amended complaint filed in this action and as allowed under the Constitution and laws of the United States.

Dated: New York, New York
         September 28, 2018

                                        BALLON STOLL BADER & NADLER P.C.


                                        _____s/Marshall B. Bellovin_____
                                        Marshall B. Bellovin, Esq.(MB 5508)
                                        729 Seventh Avenue, 17th Floor
                                        New York, New York 10019
                                        T: 212-575-7900
                                        F: 212-764-5060
                                        mbellovin@ballonstoll.com